UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NATHAN BILL WIGGS,

               Plaintiff,

    v.

ADAM CLARNO, et al.,

               Defendants.

CASE NO. 3:18-CV-05815-RJB-DWC

REPORT AND RECOMMENDATION

Noting Date: April 26, 2019

The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently pending before the Court is Defendants' Motion for Summary Judgment. Dkt. 36, 45.[1]

After reviewing the relevant record, the Court finds Plaintiff Nathan Bill Wiggs failed to exhaust his administrative remedies regarding the claims raised in the Complaint. Therefore, the Court recommends Defendants' Motion for Summary Judgment (Dkt. 36) be granted. As

---

[1] The Motion for Summary Judgment was filed on behalf of Defendants Nicole Buckingham, Adam Clarno, Kelli Delp, Robert Edgington, John Edelen, Norman Goodenough, Ken Jennings, Carianne Shuster, Jeffrey Watson, and Michael Zembas. Dkt. 36. Defendant CeCe Kairos joined the Motion for Summary Judgment. Dkt. 45. Defendants Tabitha Carlson, Shane Ririe, and Nelson Yu have been dismissed. Dkt. 23. The Court notes there also are several Doe Defendants who have not been served. Therefore, the Motion for Summary Judgment has been brought on behalf of all named Defendants currently pending in this action.

1  Plaintiff has not exhausted the administrative remedies available to him, the Court also finds

2  Plaintiff's request (Dkt. 52) to correct the names of four Doe Defendants should be denied and

3  this case should be closed.

4  **I.      Background**

5       Plaintiff, an inmate currently housed at the Coyote Ridge Corrections Center ("CRCC"),

6  alleges Defendants violated his Eighth Amendment rights when they failed to timely provide

7  Plaintiff with a CPAP machine for his severe sleep apnea. Dkt. 7.

8       Defendants filed the Motion on February 20, 2019. Dkt. 36. Plaintiff filed a Response to

9  the Motion on April 1, 2019. Dkt. 51. Defendants did not file a reply.

10 **II.     Standard of Review**

11      Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

12 file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

13 movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

14 entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

15 showing on an essential element of a claim in the case on which the nonmoving party has the

16 burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

17 fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

18 the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

19 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

20 metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

21 material fact exists if there is sufficient evidence supporting the claimed factual dispute,

22 requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

23

24

REPORT AND RECOMMENDATION - 2

1  *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d
2  626, 630 (9th Cir. 1987).

3    **III.    Discussion**

4      Defendants allege Plaintiff failed to exhaust the administrative remedies available to him as
5  to the claims alleged in the Complaint. Dkt. 36. Plaintiff contends his grievances were resolved
6  and, therefore, he exhausted his administrative remedies. Dkt. 51.

7      A.  *Legal Standard*

8      Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, he must first
9  exhaust all available administrative remedies. Under the Prison Litigation Reform Act of 1995
10 ("PLRA"),

11      No action shall be brought with respect to prison conditions under section 1983 of
        this title, or any other Federal law, by a prisoner confined in any jail, prison, or
12      other correctional facility until such administrative remedies as are available are
        exhausted.

13 42 U.S.C. § 1997e(a). Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v. Churner*,
14 532 U.S. 731, 739 (2001). The mere fact a plaintiff has filed an initial grievance under a prison's
15 grievance policy does not satisfy the PLRA exhaustion requirement; a plaintiff must exhaust *all*
16 levels of an available grievance procedure before he can initiate litigation. *See id.* at 736-41; *Porter*
17 *v. Nussle*, 534 U.S. 516, 524-25 (2002). Even when the prisoner seeks relief not available in
18 grievance proceedings, notably money damages, exhaustion is still a prerequisite to suit. *Booth*,
19 532 U.S. at 741. If a claim is not exhausted, it must be dismissed. *McKinney v. Carey*, 311 F.3d
20 1198, 1199 (9th Cir. 2002).

21      Failure to exhaust administrative remedies is properly brought as a summary judgment
22 motion. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Once the defendant proves there was
23 an available administrative remedy and the offender failed to exhaust the available remedy, the
24

1   burden shifts to the plaintiff. The plaintiff must show there was something about his particular

2   claim which made the "existing and generally available administrative remedies effectively

3   unavailable to him." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Hilao v.*

4   *Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

5       B.  *Defendants' Evidence*

6          Defendants' evidence shows prisoners in the custody of the Washington State Department

7   of Corrections ("DOC") may file administrative grievances pertaining to several routine matters,

8   including conditions of confinement, staff conduct, or retaliatory conduct. Dkt. 37, Caldwell Dec, ¶

9   4 (signature page at Dkt. 54); Dkt. 37-1, p. 10. Prisoners may also file emergency grievances when

10  there is a potentially serious threat to the life or health of an inmate or staff member, or involve a

11  potential threat to the orderly operation of a facility. Dkt. 37-1, p. 8. Under DOC policy, the

12  grievance procedure consists of four levels of review. Dkt. 37, Caldwell Dec., ¶ 6. Both routine and

13  emergency grievances are initially filed at Level 0. *Id*. At Level 0, the facility's "grievance

14  coordinator pursues informal resolution, returns the complaint to the offender for rewriting, returns

15  the complaint to the offender requesting additional information, or accepts the complaint and

16  processes it as a formal grievance." *Id*. After satisfactory review of the informal grievance at Level

17  0, the grievance coordinator accepts routine and emergency grievances as formal grievances at

18  Level I and complaints alleging staff misconduct at Level II. *Id*. If the Level 0 grievance is

19  informally resolved, an inmate may appeal the informal resolution if he is not satisfied. Dkt. 37-1,

20  p. 19.

21          If the grievance proceeds beyond Level 0, the grievance coordinator issues a formal

22  response at Level I. *See id*. A prisoner may appeal the denial of either a routine or emergency

23  grievance to the superintendent of the facility at Level II. *See id*.; Dkt. 37, Caldwell Dec., ¶ 6.

24

REPORT AND RECOMMENDATION - 4

1    "Inmates may appeal all Level II responses to Department Headquarters in Tumwater, where they

2    are reviewed" at Level III. Dkt. 37, Caldwell Dec., ¶ 6. Level III is the final level of review. Dkt.

3    37-1, p 19; *see also* Dkt. 37, Caldwell Dec., ¶ 7.

4         Here, evidence shows Plaintiff filed six grievances prior to the date he initiated this lawsuit.

5    Dkt. 37, Caldwell Dec., ¶¶ 15-20. On December 19, 2017, Plaintiff filed Grievance 17646513

6    complaining the Washington Corrections Center ("WCC") refused to accept Plaintiff's personal

7    CPAP machine that Plaintiff's family attempted to send him. *Id*. at ¶ 15; Dkt. 37-2, pp. 2-4.

8    Plaintiff did not appeal this grievance. Dkt. 37, Caldwell Dec., ¶ 15; Dkt. 37-2, pp. 2-4.

9         On December 19, 2017, Plaintiff also filed Grievance 17646514 regarding the status of his

10    medical records and complaining that it was not appropriate to be without a CPAP machine due to

11    his sleep apnea diagnosis. *See* Dkt. 37, Caldwell Dec., ¶ 16; Dkt. 37-2, pp. 5-11. Plaintiff did not

12    appeal Grievance 17656514; however, he filed an emergency grievance with the same log number

13    on December 31, 2017, requesting his CPAP machine be approved. Dkt. 37, Caldwell Dec., ¶ 16;

14    Dkt. 37-2, p. 12. The December 31, 2017 "emergency" grievance was deemed "non-emergency"

15    and processed at Level I. Dkt. 37, Caldwell Dec., ¶ 16; Dkt. 37-2, p. 12. Plaintiff received a

16    response and did not appeal Grievance 17646514 to Level II. Dkt 37, Caldwell Dec., ¶ 16; Dkt. 37-

17    2, p. 13.

18         Plaintiff filed a third grievance, Grievance 17646515, on December 19, 2017. Dkt. 37-2, p.

19    14. In Grievance 17646515, Plaintiff complained he sent a message to the mental health

20    department regarding worsening depression because he was unable to have quality sleep without

21    his CPAP machine. *Id*.; Dkt. 37, Caldwell Dec., ¶ 17. This grievance was resolved and Plaintiff did

22    not appeal the grievance to Level II. Dkt. 37, Caldwell Dec., ¶ 17; Dkt. 37-2, p. 14.

23

24

On January 18, 2018, Plaintiff filed Grievance 18648489 requesting his CPAP machine be approved. Dkt. 37, Caldwell Dec., ¶ 18; Dkt. 37-2, p. 15. Plaintiff was asked to rewrite the grievance because it contained too many issues. Dkt. 37, Caldwell Dec., ¶ 18; Dkt. 37-2, p. 15. Plaintiff provided a rewritten grievance, which was accepted at Level I. Dkt. 37, Caldwell Dec., ¶ 18; Dkt. 37-2, p. 16. Plaintiff appealed the Level I response, but was asked to rewrite his Level II grievance. *See* Dkt. 37, Caldwell Dec., ¶ 18; Dkt. 37-2, p. 18. Plaintiff provided a rewritten Level II grievance, but was again asked to rewrite the grievance because it contained multiple issues. Dkt. 37-2, p. 19; Dkt. 37, Caldwell Dec., ¶ 18. Plaintiff did not file another rewritten grievance or appeal the response to Level III. Dkt. 37, Caldwell Dec., ¶ 18.

Plaintiff filed Grievance 18650757 on February 20, 2018. Dkt. 37-2, p. 20. Plaintiff again sought approval for a CPAP machine to treat his sleep apnea. *Id*.; Dkt. 37, Caldwell Dec., ¶ 19. The initial grievance was accepted as a Level I grievance. Dkt. 37, Caldwell Dec., ¶ 19; Dkt. 37-2, p. 20. After several extensions, the grievance was investigated and Plaintiff agreed to fill "out the Offender-Paid DME form," to allow him to have his personal CPAP machine sent to CRCC. Dkt. 37-2, pp. 21-24; Dkt. 37, Caldwell Dec., ¶ 19. Plaintiff did not appeal Grievance 18650757 to Level II. Dkt. 37, Caldwell Dec., ¶ 19.

Last, Plaintiff filed Grievance 18658218 on June 8, 2018. Dkt. 37-2, p. 25. In Grievance 18658218, Plaintiff complained about the delay in scheduling a sleep study after it was approved by the Care Review Committee. *Id*.; Dkt. 37, Caldwell Dec., ¶ 20. The grievance was submitted at Level I and Plaintiff was informed that appointments with outside clinics were based on the availability of the clinic. Dkt. 37-2, p. 27; *see also* Dkt. 37, Caldwell Dec., ¶ 20. Plaintiff did not appeal this grievance to Level II. Dkt. 37, Caldwell Dec., ¶ 20.

1    Defendants' evidence shows Plaintiff "has not exhausted any of his administrative

2  remedies." *Id.* at ¶ 21.

3    Based on the evidence detailed above, the Court finds Defendants carried the initial burden

4  of showing the absence of exhaustion in this case. The undisputed evidence presented by

5  Defendants shows there was a grievance procedure in place at the time of the incidents complained

6  of in the Complaint. Plaintiff was aware of the grievance process and participated in the grievance

7  process while housed at both WCC and CRCC. Plaintiff, however, did not complete the grievance

8  process for the claims alleged in his Complaint.

9    C.    *Plaintiff's Response*

10    The burden now shifts to Plaintiff, "who must show that there is something particular in his

11  case that made the existing and generally available remedies effectively unavailable to him by

12  'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or

13  obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747

14  F.3d at 1172). Acts by prison officials preventing the exhaustion of administrative remedies may

15  make administrative remedies effectively unavailable. *See Nunez v. Duncan*, 591 F.2d 1217, 1224-

16  25 (9th Cir. 2010). "The ultimate burden of proof, however, remains with the defendants," and the

17  evidence must be viewed in the light most favorable to the plaintiff. *Paramo*, 775 F.3d at 1191

18  (citing *Albino*, 747 F.3d at 1172). The Supreme Court held there are three circumstances in which

19  an administrative remedy is not capable of potential relief:

20    First, an administrative procedure is unavailable when it operates as a simple dead
      end—with officers unable or consistently unwilling to provide any relief to
21    aggrieved inmates. Next, an administrative scheme might be so opaque that it
      becomes, practically speaking, incapable of use—i.e., some mechanism exists to
22    provide relief, but no ordinary prisoner can navigate it. And finally, a grievance
      process is rendered unavailable when prison administrators thwart inmates from
23    taking advantage of it through machination, misrepresentation, or intimidation.

24

1 | *Ross v. Blake,* 136 S. Ct. 1850, 1853–1854 (2016).

2    In his sworn Response to the Motion, Plaintiff argues his grievances were resolved prior to

3 Level III and, therefore, he exhausted the administrative remedies. Dkt. 51. A prisoner is not

4 required to appeal favorable grievance decisions when he has won all the relief available. *See*

5 *Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010); *Levy v. Washington State Dept. of*

6 *Corrections*, 2009 WL 1107698 (W.D. Wash. April 23, 2009). However, a prisoner has an

7 obligation to exhaust the administrative process even if he is partially satisfied by the prison's

8 response to his grievance. *See Benitez v. Cty. of Maricopa*, 667 F. App'x 211, 212 (9th Cir.

9 2016) (noting *Harvey* did not excuse the plaintiff's exhaustion because, unlike in *Harvey*, the

10 plaintiff was not induced to abandon his grievance appeal based on an unfulfilled promise by the

11 prison).

12    First, Plaintiff asserts Grievances 17646513, 17646515, 18650757, and 18658218 were

13 resolved in Plaintiff's favor and, thus, constitute exhaustion of administrative remedies. Dkt. 51.

14 The evidence shows, in Grievance 17646513, Plaintiff requested the status of his CPAP machine

15 that had been sent by his family to WCC and asked if the property department could hold the

16 CPAP machine while Plaintiff obtained a health status report ("HSR") for the CPAP machine.

17 Dkt. 37-2, p. 2. The grievance form indicated the grievance was informally resolved, but it was

18 not resolved in Plaintiff's favor. *See id*. Rather, Plaintiff was informed that packages were not

19 allowed in his unit and a package, presumably containing the CPAP machine, was returned to his

20 family. *See id*. Plaintiff did not receive a fully favorable resolution because Plaintiff did not

21 obtain his CPAP machine, nor did the property department hold his CPAP machine for him

22 while he obtained an HSR. Furthermore, Grievance 17646513 appears to only seek information

23 and, thus, does not grieve any alleged wrong-doing by any Defendant in this case.

24

REPORT AND RECOMMENDATION - 8

In Grievance 17646515, Plaintiff requested a medical appointment regarding his depression. Dkt. 37, p. 14. He also stated his depression was worsening because he did not have a CPAP machine. *Id*. This grievance was marked as resolved informally; however, based on future grievances and allegations in the Complaint, Plaintiff did not receive the requested relief. There is no indication Plaintiff received a CPAP machine.

In Grievance 18650757, Plaintiff requested review of his case and approval for a CPAP machine. Dkt. 37-2, p. 20. Plaintiff states he did not appeal Grievance 18650757 because he began receiving the treatment and any appeal would have been delayed while he awaited a sleep study. Dkt. 51. Plaintiff has not shown he won all the relief requested or that he was unable to appeal this grievance through all stages of the administrative process. Plaintiff had not yet received a CPAP machine. Further, in Grievance 18658218, Plaintiff complained of the length of time it was taking to be seen for the sleep study, indicating he was not satisfied with the resolution of Grievance 18650757.

Plaintiff also states he did not appeal Grievance 18658218, complaining of delay in scheduling his sleep study, because the response he received was adequate. Dkt. 51. In response to this grievance, Plaintiff was told scheduling was dependent on the outside clinic's schedule. Dkt. 37-3, p. 27. While this response may have been "adequate" or reasonable, there is no indication Plaintiff received all the relief available. For example, had Plaintiff appealed this grievance he may have been scheduled for the sleep study sooner or received access to a CPAP machine more quickly.

While Grievances 17646513 and 17646515 were resolved at Level 0 and Grievances 18650757 and 18658218 were responded to "adequately", these grievances did not result in favorable decisions wherein Plaintiff won all the relief available. Therefore, these four

1  grievances do not meet the exhaustion requirements. *See Booth*, 532 U.S. at 741 ("Congress has

2  mandated exhaustion . . . regardless of the relief offered through administrative procedures");

3  *Benitez*, 667 F. App'x at 212 (finding grievances did not satisfy exhaustion when the plaintiff

4  received a partial favorable response, but did not receive all the relief he requested and did not

5  complete all levels of appeal); *Levy*, 2009 WL 1107698 at *7-8 (finding the plaintiff failed to

6  exhaust when he received the relief he requested at Level II, but indicated he wanted pursue his

7  grievance because he wanted to sue someone; thus, showing there were additional remedies he

8  sought); *Hazelton v. Alameda*, 358 F.Supp.2d 926, 934-35 (C.D. Cal. 2005) (finding the plaintiff

9  failed to exhaust all of his available administrative remedies when it was "possible that he might

10  have obtained additional relief if he had pursued his appeal through" the highest "level of formal

11  review, even if he was precluded from obtaining" the particular form of relief he sought)

12          Second, Plaintiff contends it was "pointless" to further appeal Grievance 17646514. *See*

13  Dkt. 51. In Grievance 17646514, Plaintiff requested his CPAP machine be provided to him. Dkt.

14  37-2, p. 12. Plaintiff states he was transferred to a new facility and, thus, this grievance was

15  mooted. Dkt. 51. Plaintiff, however, has not shown, nor does the Court find, he was unable to

16  completely exhaust Grievance 17646514. In fact, Plaintiff was told he could still grieve, and did

17  grieve, matters pertaining to WCC after he had been transferred to CRCC. *See* Dkt. 7, pp. 43-44;

18  *see also* Dkt. 37-2, p. 19. As there is no evidence the administrative remedies were unavailable

19  once Plaintiff was transferred from WCC to CRCC, Grievance 17646514 does not meet the

20  exhaustion requirements. *Wright v. Smith*, 2013 WL 3787528, at *7 (E.D. Cal. July 18, 2013)

21  ("Most courts agree that grievance procedures at a transferor facility remain available to prisoners

22  transferred to a different prison if both prisons are administered by the same agency.").

23

24

1    Third, Plaintiff argues he exhausted his administrative remedies because Grievance

2  18648489 was administratively withdrawn. Dkt. 51. Evidence shows Plaintiff was asked to rewrite

3  Grievance 18648489 and narrow his issues. Dkt. 37, Caldwell Dec., ¶ 18. Plaintiff did not narrow

4  the issues in this grievance or appeal the response. *Id.* Therefore, the grievance was

5  administratively withdrawn. *See* Dkt. 37-2, p. 19. Plaintiff did not comply with the procedural rules

6  in place for submitting grievances, nor does he allege he was barred from pursuing this grievance.

7  As such, Plaintiff has not shown Grievance 18648489 satisfies the exhaustion requirements. *See*

8  *Woodford*, 548 U.S. at 88 ("a prisoner must complete the administrative review process in

9  accordance with the applicable procedural rules, including deadlines, as a precondition to

10  bringing suit in federal court").

11    As Plaintiff did not fully follow the proper grievance procedures available at WCC or

12  CRCC, he has not overcome Defendants' showing that he failed to exhaust administrative

13  remedies available to him. Therefore, the Court concludes Plaintiff failed to properly exhaust the

14  claims alleged in the Complaint and the Complaint should be dismissed without prejudice. *Wyatt v.*

15  *Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) *overruled on other grounds by Albino,* 747 F.3d at

16  1162 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies,

17  the proper remedy is dismissal of the claim without prejudice."); *Carrea v. California*, 551 F.

18  App'x 368, 369 (9th Cir. 2014) (remanding for the entry of dismissal without prejudice because

19  the proper remedy for non-exhaustion is dismissal without prejudice). Accordingly, the Court

20  recommends the Motion (Dkt. 36) be granted.

21  **IV.    Motion for Relief from Deadline (Dkt. 52)**

22    On April 1, 2019, Plaintiff filed a Motion for Relief from Deadline, wherein he attempts to

23  name four Doe Defendants. Dkt. 52 (identifying three individuals previously named Doe

24

1    Defendants and removing "Doe" from Defendant Department of Enterprise Services – Office of

2    Risk Management). As the Court finds Plaintiff has not exhausted the administrative remedies

3    related to the claims alleged in the Complaint, simply naming Doe Defendants does not warrant

4    granting leave to amend the Complaint. Therefore, the Court recommends the Motion for Relief

5    from Deadline (Dkt. 52) be denied.

6    **V.    Conclusion**

7        For the above stated reasons, the Court recommends Defendants' Motion for Summary

8    Judgment (Dkt. 36) be granted, Plaintiff's Motion for Relief from Deadline (Dkt. 52) be denied,

9    the Complaint be dismissed without prejudice, and this case be closed.

10       Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen

11   (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure

12   to file objections will result in a waiver of those objections for purposes of *de novo* review by the

13   district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R.

14   Civ. P. 72(b), the clerk is directed to set the matter for consideration on April 26, 2019, as noted in

15   the caption.

16       Dated this 11th day of April, 2019.

17

18   _____

       David W. Christel
19     United States Magistrate Judge

20

21

22

23

24

REPORT AND RECOMMENDATION - 12